47 CCPA
**Application of Allen L. GOLDSMITH and Charles E. Hickman.**

**Patent Appeal No. 6474.**

United States Court of Customs and Patent Appeals.

March 30, 1960.

Balluff and McKinley, Detroit, Mich. (Edwin J. Balluff, Detroit, Mich., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (D. Kreider, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge William H. Kirkpatrick.[1]

SMITH, Judge.

The claims on appeal cover an apparatus (claim 43) and method (claims 45, 46, 48 and 49) for the extrusion of metal tubing, particularly aluminum tubing. The examiner's rejection of these claims was affirmed by the Board of Appeals and, after this decision was adhered to upon reconsideration, the present appeal was taken.

■ Claim 43, directed to the apparatus, is as follows:

"Apparatus for extruding metal tubing comprising a first tube die member, a second tube die member, a coalescence chamber therebetween, and a core in said chamber, said first die member having a socket in which one end of said core is loosely received so that said core is loosely supported in said coalescence chamber, means independent of said core for feeding metal in a solid state under pressure into said chamber so as to coalesce said metal around said core and to extrude metal tubing

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* O'CONNELL, pursuant to provisions of Section 294(d), Title 28 U.S.C.

from said chamber, said second tube die member being provided with a die opening communicating with said chamber for determining the outside of the tubing as it is extruded from said chamber, the other end of said core projecting freely into said die opening for determining the inside of said tubing as it is extruded, said core being provided with a transversely extending surface facing said die opening and exposed to and engaged by the metal in said chamber so that the pressure thereof on such surface during a [sic] extruding operation forms the sole means for holding said core against axial movement through said die opening and relative to said die members during said extruding operation."

The method claims 46, 48, and 49 are essentially the process counterpart of apparatus claim 43. Claim 45 is a method claim of somewhat broader scope which reads as follows:

"That method of extruding metal tubing wherein a core member projects into the opening in an annular die member and wherein said members are axially immovable relative to each other during an extruding operation and one of said members is free to shift transversely relative to the axis thereof, which consists of heating and subjecting a billet of metal in a solid state to pressure so as to force the metal thereof to flow and coalesce under pressure around said core member and against said die member and to flow through the space therebetween and positioning said core member and die member in a predetermined position relative to each other solely by utilizing the pressure exerted by said metal on said core member during an extruding operation."

The references relied upon are:

| | | |
|---|---|---|
| Hanson, Reissue | 82 | Mar. 14, 1846 |
| Gahlen | 1,084,881 | Jan. 20, 1914 |
| Neuberth | 1,285,328 | Nov. 19, 1918 |
| Skinner | 1,847,365 | Mar. 1, 1932 |
| McFadden | 2,366,344 | Jan. 2, 1945 |
| Ottermayr (British) | 437,075 | Oct. 23, 1935 |
| French patent | 865,463 | Feb. 24, 1941 |
| Glynn et al. (British) | 613,057 | Nov. 22, 1948 |

While the rejection of the claims by the examiner relied upon the teachings of many of these references, the board saw fit to criticize his application of a number of the references and to allow claims which had been rejected thereon. The board preferred to consider Gahlen and Glynn et al., individually, in rejecting claim 43 and also in sustaining the examiner's rejection of claims 45, 46, 48 and 49. There is no specific reversal of the examiner as to the other grounds of rejection of claims 43, 45, 46, 48 and 49, and, since the general affirmance of the examiner as to those claims is an affirmance of all grounds of the rejection, it is necessary for us to consider all of the cited art.

The invention claimed in the claims on appeal can be best understood against the background of the prior art represented by the references relied upon by the examiner. Hanson, McFadden, Skinner and Ottermayr each disclose apparatus to be used in extruding tubing. In each of these references a solid slug of metal is placed in a pressure chamber where it is heated and is forced under pressure to flow into a coalescence chamber having an extrusion outlet, the shape and external diameter of which is determined by the form of a female die member

placed in the outlet. A core is placed in the coalescence chamber and has its free end located in the female die outlet so that the extruded metal passes out of the chamber between the core and the female die outlet member to form the extruded tubing. In each of these references, the core member is rigidly mounted in the coalescence chamber and this rigid mounting is relied upon to maintain the core member accurately centered relative to the female die member.

The French patent discloses the extrusion of a sheath about a strand. There is no core member which extends into the die outlet and forms part of the apparatus. The core stops short of the die outlet and is hollow to permit passage of the strand to be sheathed.

Appellant's invention, as defined by claims 43, 46, 48 and 49 here on appeal, distinguishes from the disclosures of Hanson, Skinner, McFadden and Ottermayr in that the core member is loosely supported in the second chamber and is held in a precentered position by pressures transmitted to it through the flowing metal. Claim 43, the apparatus claim, calls for placement of the core in a socket in the "first die member" in the coalescence chamber "so that said core is loosley supported in said coalescence chamber." Means are provided for holding the core in the chamber so that it will not be displaced axially during extrusion of the metal. Claim 43 defines this feature as follows: "said core being provided with a transversely extending surface facing said die opening and exposed to and engaged by the metal in said chamber so that the pressure thereof on such surface during an extruding operation forms the sole means for holding said core against axial movement through said die opening and relative to said die members during said extruding operation."

A similar recital in terms of method is found in claims 46, 48 and 49.

We agree with the statement of the Board of Appeals in its original opinion that

" * * * Because of the loose mounting of the core, the record

makes clear that it is possible to directly extrude tubing down to one-fourth inch in diameter with substantially uniform wall thicknesses of acceptable dimension, with any variations in thickness within acceptable tolerances.

"Prior to the present change in the form of apparatus that had been so long used (as exemplified by Hanson, Skinner, McFadden and Ottermayr) it was not possible for such form of apparatus or for any other form of tubing extrusion apparatus, to directly extrude tubing of a diameter materially less than one and one-fourth inch with an acceptable wall thickness uniform within acceptable tolerances. Prior to the present invention, tubes having a diameter less than one and one-fourth inch were made by extruding the larger size tubing (e. g., one and one-fourth tubing) and drawing the same down to the smaller sizes."

Facts supporting the foregoing statement of the Board of Appeals are amply established by the affidavits of record and are not denied by the examiner.

We also agree with the Board of Appeals in the statement in the original opinion that,

" * * * Where a modification of a prior known device for extruding tubing makes it possible for the first time to directly extrude tubing of $\frac{1}{4}$ of an inch in diameter with acceptable wall thicknesses accurate within acceptable tolerances, whereas prior to such change such prior known apparatus and other prior known forms of tube extruding apparatus could extrude metal tubing only to the minimum of $1\frac{1}{4}$ inches in diameter with wall thicknesses accurate within the acceptable tolerances, thus requiring subsequent drawing to smaller diameters, such difference pertains not to utility, but to a new result."

We have examined the claims on appeal and are of the opinion that claims 43, 46,

48 and 49 properly define the noted novelty over the art of record.

This, therefore, leaves but a single issue for determination, namely, does the showing in the subsidiary art, Neuberth, Gahlen, and Glynn et al., of a loosely mounted core, make it obvious to one skilled in the art to incorporate this feature in Hanson, Skinner, McFadden or Ottermayr, and thus preclude allowance of claims 43, 46, 48, and 49?

The subsidiary references show apparatus for and methods of extruding tubing which utilize a female die and a core member having its free end extending into the female die to determine the interior diameter of the tubing. None of the subsidiary references pertains to the type of extrusion apparatus having a coalescence chamber as shown in the basic references. The apparatus shown in the subsidiary references uses a single chamber in which the axial mandrel or core member is mounted. Metal is placed in the single chamber in the form of an annular slug which surrounds the mandrel or core member. In each of these references the mandrel or core is mounted on an arbor and is held thereon by a mechanical connection which permits some lateral movement of the core or mandrel relative to the female die.

While the subsidiary references have somewhat different structural details it is sufficient for the purpose of this decision to note that these references describe apparatus in which a floating mandrel is provided. The Board of Appeals found, and we agree,

"* * * The record establishes, however, that this form of apparatus could not give accurately dimensioned wall thicknesses for small diameter tubes, and further makes clear that the art moved away from this form of apparatus and method due to this and other deficiencies clearly pointed out in the record which we deem unnecessary to expound here. The preceding is not challenged by the examiner. * * *"

The board in allowing certain of the claims before it found that it would not

be obvious to utilize the floating core taken from the subsidiary references and to place such a core in the apparatus of the primary references and concluded,

"* * * Thus, we are of the opinion that the loose mounting of the core in the instant form of apparatus was not made obvious by the art and is, in fact, a patentable advance, since it provides unobvious, advantageous results. * * *"

The board, however, applied Glynn et al., and Gahlen, individually, in affirming the examiner's rejection of claim 43. Glynn et al. discloses a mounting of the core on the end of the arbor by the use of a ball and socket joint. The core is thus held mechanically against axial movement and not solely by the pressure of the metal on a transversely extending surface on the core as called for in claim 43.

Gahlen differs from Glynn only in the method of mounting the axially movable core on the end of the arbor. As in Glynn, a mechanical connection is provided to prevent axial displacement of the core. The metal being extruded does not form the "sole means" for preventing axial displacement of the core as called for in claim 43.

As we view appellant's invention it is this precise feature which constitutes the critical element of novelty. The mechanical connections provided between the cores and the ends of the arbor in Glynn et al. are such that extruded metal in the chamber will flow into the mechanical connections provided and, upon shutdown of the machine, will solidify therein. Thus, upon starting the machine, the core and arbor would in effect constitute a single rigidly connected part with the entrapped solidified metal held against the core and locking it rigidly in the mechanical connection there provided. While this might not be a material objection to the use of such constructions in extrusion processes of the type shown in Gahlen or Glynn et al., where the core and arbor are readily retractable from the extrusion chamber, it would be a very impractical construc-

tion in extrusion dies having coalescence chambers of the type claimed by appellants. When using the pierced billet type of extruder shown in Gahlen and Glynn et al., the arbor and core are withdrawn from the chamber each time a new billet is placed therein, and such mechanical work as may be required to free the connection between the core and the arbor can be readily performed. Where, however, the core is placed inside a closed coalescence chamber as shown by appellants, it would be necessary on each shutdown of the machine to open the chamber and make the required mechanical adjustments of the core. However, by using the construction shown and claimed by appellants, the core is loosely seated in a recess in the die member and the metal flowing through the chamber exerts a pressure on the annular flange adjacent the base of the core which holds the core tightly in the socket so that the metal is prevented from flowing into this connection. The annular flange thus not only protects the loose mounting of the core in the coalescence chamber but it also functions as a mechanical element against which the pressure of the metal is exerted to prevent axial displacement of the core. Thus, in appellants' construction the core is at all times loosely mounted in the die opening and, even after shutdown of the machine, will not be frozen in a predetermined position by metal entrapped in a mechanical connection between the core and its support as would be true in Glynn et al. This appears to be a new and clearly unobvious result which was apparently overlooked by the Board of Appeals. We think claim 43, therefore, is directed to patentable subject matter and is properly allowable over the references of record either when applied as the examiner applied them or when applied as the board applied them to this claim.

Our conclusion in this respect is not affected by the disclosures in Neuberth in which the motion of the metal of the billet during the extruding process separates the arbor from the dummy block.

Claims 46 and 49 each contain a limitation to the novel feature of the method which requires that the core member be held against axial movement "solely by utilizing the back pressure exerted by said metal during an extruding operation on said core member." Claim 48 requires that the pressure exerted by the metal during the extruding operation is utilized "to center said core and die members relative to each other and to hold said core member against axial movement toward and through said die member."

These claims are proper method claims and clearly call for the specific feature of utilizing the pressures of the metal for the dual purpose of centering the loosely mounted core in the female die member while holding it against axial displacement. The art of record does not disclose such a method. We, therefore, find these claims to be allowable.

This leaves rejected claim 45 for further consideration. This claim calls for "positioning said core member and die member in a predetermined position relative to each other solely by utilizing the pressure exerted by said metal on said core member during an extruding operation." The Glynn et al. reference shows a floating core which is centered in the female die member by pressures exerted on it by the metal as it flows through the annular space between the core and female die. Similarly in Gahlen, the pressures exerted by the flowing metal centers the core in the female die. While neither Gahlen nor Glynn et al. rely solely upon the pressure of the metal to maintain the core against axial displacement, the core members are "axially immovable" relative to the annular die member during the extruding operation. This is all that is called for by claim 45. The lateral positioning of the core in the die member in both Gahlen and Glynn et al. is accomplished "solely by utilizing the pressure exerted by said metal on said core during an extruding operation" as called for in claim 45.

We, therefore, find claim 45 so broad as to read upon both Gahlen and Glynn

et al. and affirm the rejection of this claim by the Board of Appeals.

We believe we have correctly interpreted the rejection of the claims by the Board of Appeals in its original opinion. However, in the opinion of the board after reconsideration, we are unable to reconcile certain views therein expressed with either the record or the specific provisions of the patent statute. We have previously quoted at some length from the opinion originally rendered by the board and with which we are in full agreement, namely, that the record herein shows an invention which has novelty, utility, and unobviousness. We find on the record before us and agree with the finding of the board in its original opinion that there was a new result achieved by appellants which provided a real advantage and advance in the highly developed and technical art of extruding metal tubing.

At the hearing, appellants' attorney made an oral motion asking us to consider certain claims which had originally been presented to the examiner but which were not included in the record before us. The purpose of this motion, as we understand it, was to overcome an implication raised in the solicitor's brief herein that the feature of holding the core against axial displacement solely by the pressure of the metal was but an equivalent of the positive mechanical connection shown in Fig. 4, which held the core against axial displacement, and thus presented a situation similar to that in In re McKee, 75 F.2d 635, 22 CCPA 1010.

As we view this motion, it is in effect a motion to correct diminution of the record and as such should have been made in accordance with the provisions of Rule 13 of this court, 35 U.S.C.A. Appendix, which requires that such a motion shall be either typewritten or printed and shall be supported by an affidavit of the party or the attorney of record as to the facts on which the same is founded. The affidavit required by the rule must also point out that the omitted mater is material and necessary to a fair trial of the case on the merits. At the oral hearing the Solicitor of the Patent Office objected to the motion and was unwilling to stipulate the facts.

We, therefore, dismiss the motion as not having been made in accordance with the provisions of Rule 13.

Since the nature of the oral motion was somewhat indefinite as to its purpose, it has also been considered as a general motion under Rule 12 and as such is dismissed for failure to comply with the provisions of that rule.

For the reasons above set forth, we modify the decision of the Board of Appeals by reversing it as to the rejection of claims 43, 46, 48 and 49, and affirming it as to claim 45.

Modified.